Lundberg Stratton, J.,
dissenting. I believe the following facts are pertinent to this case. Two months before the accident in question, Ina Spurlock purchased a personal automobile insurance policy from Lightning Rod Mutual Insurance Company. The insurance agent specifically asked Spurlock whether she delivered pizzas for Domino’s and she replied that she did not. Therefore, the agent sold Spurlock an insurance policy that excluded liability coverage for any accidents that occurred while “carrying] persons or property for a fee,” instead of a commercial policy that would have provided liability coverage for commercial deliveries.
However, Spurlock’s duties for Domino’s did include the delivery of pizzas. According to Lightning Rod, during a period of 143 days in 1991, Spurlock delivered pizzas on 125 days. Domino’s records indicate that Spurlock used the Domino’s vehicle only fifteen of those days. Furthermore, Domino’s required all its pizza delivery drivers to carry liability insurance on their own personal vehicles used for pizza deliveries.
Domino’s paid Spurlock an hourly wage for delivering pizzas. It was the same hourly wage she received for other duties performed for Domino’s. When delivering pizza, Spurlock was reimbursed by Domino’s at eighteen cents per mile, and she also may have received gratuities directly from customers.
I disagree with the majority that various definitions of the word “fee” create an ambiguity in what is otherwise an unambiguous exclusionary clause. There is no need to read various meanings or connotations into the word “fee.” A common, ordinary usage of the word is sufficient. The plain language of the clause excludes coverage to Spurlock because she was carrying property (pizza) for a fee (hourly wage). The pizza delivery driver’s hourly wage could constitute either a “fee” defined as “compensation, or wage * * * for performance of services,” or a fee “for a particular act or service” of delivering the pizzas at that time. Black’s Law Dictionary (6 Ed.1990) 614. As Judge Deshler pointed out in his well- *590 reasoned dissent in Colonial Ins. Co. of California v. Jermann (1995), 102 Ohio App.3d 384, 389, 657 N.E.2d 336, 339, “This is an attempt to manufacture ambiguity by creating a distinction without a difference.” See, also, Dhillon v. Gen. Acc. Ins. Co. (Apr. 11, 1991), TexApp. No. C14-90-00714-CV, unreported, 1991 WL 51470; Krauss v. DeRocili (Aug. 2, 1988), Del.Super. Ct. No. 86C-NO-60, unreported, 1988 WL 90532.
The fact is that Spurlock was not gratuitously delivering pizzas for Domino’s or for the persons who ordered the pizzas. She was being paid to deliver the pizzas. Whether it be a driver who exclusively delivers pizzas, or one like Spurlock whose job purportedly included duties in addition to delivering for Domino’s, the person making the delivery is being paid to use his or her vehicle for the purpose of delivering pizzas at a particular time.
Furthermore, the majority’s opinion sanctions an employer’s shifting the risk of doing business upon the employee. An inherent risk of Domino’s business is the risk of injury to its driver-employees delivering pizzas. Domino’s recognized this risk and insured against it by purchasing a business policy from USF&G. The parties admitted at oral argument that if Spurlock’s individual policy did not provide coverage for this accident, then the USF&G policy would. However, the majority’s opinion now shifts any risk of doing business from Domino’s and places the cost of this risk upon Domino’s employees. This is an unfair and inequitable result, particularly since it is Domino’s that receives the financial benefit from the sale and delivery of its pizzas. The majority opinion allows an employer to refuse to supply its drivers with a company vehicle and, instead, to require its employees to place their own vehicles into commercial use. These employees will now be forced to bear the increased costs of a commercial insurance policy so that they may continue to deliver pizzas for the financial benefit of their employer.
Finally, the majority refuses to consider that, by using his or her own vehicle to make the deliveries, the pizza delivery driver is placing that vehicle into commercial use. This is a risk that the insurance company did not anticipate or contemplate when issuing its policy to the insured. In fact, the exclusionary language at issue proves that Lightning Rod specifically did not intend to insure the vehicle for any such commercial uses. Using common sense, one can discern a difference between the employee who uses his or her own vehicle for an isolated, solitary errand for an employer and the employee who is repeatedly required to drive his or her personal vehicle in the regular course of company business. Lightning Rod should not be held accountable for risks it did not intend to insure.
The Lightning Rod policy was issued to an individual for personal use. If the vehicle insured under the policy is to be used for anything other than personal use, ie., business or commercial use, this requires different coverage.
*591 Consequently, for the above reasons, I respectfully dissent and would affirm the court of appeals.